The next case on the calendar is number 21-1400, Thomas v. Weldenreuter. Good morning, Your Honor. Can you hear me? Good morning. Yes, we can. Yes, thank you. Robert Vanderweg for the Defendant Appellant Police Office. If you could wait one moment, we're getting situated here in the courtroom. Very good. Mr. Vanderweg. Yes, thank you very much, Your Honor. Robert Vanderweg for the Defendant Appellant Police Officer. This case involved the alleged excessive use of force by the police officer in pursuing and eventually the police apprehending an individual, a plaintiff, who had robbed a convenience store at a gas station in Omont, New York. The defendant police officer was off-duty, had just finished a 12-hour shift, and was stopping at a gas station for his personal car. When he was doing that, he noticed that an individual taxicab driver was filling up, and that driver went in to pay, came out, and exclaimed, basically, the place is being robbed. He hadn't done, and that individual took off. The police officer was off-duty again in his plain clothes, looked through the windows at the convenience store, and saw somebody in maybe a hooded type of jacket, pointing, but he couldn't tell what he was doing. The individual, that individual, came out, and right after that, the convenience store clerk came out and explained, I've been robbed, and there he is, and pointed to the plaintiff. With that, the police officer told the individual to stop. He walked towards them, pursued them. The plaintiff would not stop and continued. They went for a short distance, and Thomas turned and reached into his waist bandana, I guess, and pulled out a gun, and the police officer fired his gun, and Thomas went down on one knee. I don't believe he hit him, but he did that, and started to flee, or continued to flee, threw away or discarded whatever he was carrying, this gun, later found to be a BB gun. The police officer continued his pursuit. They were on the street next to the service station, and Thomas, now they're in a residential area, Thomas hopped over a fence into a house yard. Wellenreuther could not get through the gate, told him to stop. He didn't. The plaintiff, according to Wellenreuther, turned and reached into his waist again, and Wellenreuther fired and hit him somehow in the back of his neck. I don't know whether it raised him, but he went down, and then he continued on. Wellenreuther could not further follow him, went back to the service station, called 911. The police apprehended Mr. Thomas in the backyard of that residence, in his car, hiding under a blanket with gloves. The Wellenreuther attorney could not, or none of the police officers who apprehended and arrested Thomas were permitted to testify, nor were their reports or statements that they had permitted to be used at the trial. The case was originally set for jury trial over a number of times. It was assigned to a magistrate, Magistrate Shields. The trial took place to the bench about 10 years after these incidents. The magistrate made a ruling on motions by plaintiffs to eliminate, and that's where the judge precluded the use of any of these third-party statements taken by the police, which were offered by the defendant on the basis that the statements were taken by the police, and the individuals could no longer be located after 10 years after due diligence. The magistrate, again, excluded any of those statements or any of the police reports. They also precluded my client's attorney from mentioning or exploring the conviction, and the trial continued. The magistrate made her decision ruling in their findings of fact and conclusion, and found that the first incident, the first shooting, was not unconstitutional, not excessive. He went on to find that the second shooting was excessive on the basis that the defendant, the plaintiff, had discarded his pistol. I don't know whether I mentioned it, but I apologize, but in the first shooting, when the plaintiff got up and continued his plea, he threw away what appeared to be his gun, and it remained there. The magistrate determined that... Mr. Vanderweg, are there any of your arguments that you make that do not depend on us finding clear error in the magistrate judge's findings of fact? Well, the county is arguing that the exclusion of the witness statements that the county had, the restrictions on the cross-examination regarding conviction, the crime itself, was an abuse of discretion affecting a substantial right, and therefore, on those basis, there should be a new trial. The magistrate found that since Thomas, the plaintiff, said that he did not turn and face the police officer at the second instance, it would be impossible for him to be shot in the back of his neck. The county argues that it's definitely possible. Twice he had spun around. These are instantaneous, virtually instantaneous movements, and so he could easily be shot in the neck. Well, didn't Mr. Wallenruther essentially acknowledge that if the second shot hit him in the back of the neck, it was inconsistent with his experience or testimony that the plaintiff was facing him at the time? Wasn't his theory essentially that it must have been the first shot that did this because the second shot couldn't have hit him in the back of the neck? Who are you saying you think made that? I had the impression reading the defendant's testimony that he imagined that it must have been the first shot that made contact because he acknowledged that his testimony that the defendant was facing him at the time of the second shot was inconsistent with the fact that the bullet entered through the back of his neck. Yes, your honor, I think that the police officer was uncertain which of his two shots actually hit the plaintiff. So that certainly is a possibility. Getting back to the county's argument regarding the fact that he was shot, even if it was the second shot, these things happen so quickly, spinning around one way or the other. There's no way that you could say it was impossible for the police officer to have shot him if he was facing him at any time. There's no evidence in the record for that. But it is true that the police officer wasn't certain which shot actually hit the plaintiff. The evidentiary ruling made by the magistrate in Lemonade, quite frankly, you know more about this than I do. In the French trial in Lemonade, application motions really should have no application because there's no jury. You don't have to concern yourself with prejudice, probative value and what have you. The magistrate or the judge makes those determinations at trial all the time. But in this particular case, the defendant's defense was severely hampered because of these rulings. There was no time frame introduced at the trial by either party. But it's clear that from the moment that the plaintiff left the convenience store to go outside and started fleeing and the pursuit by the police officer through the first incident and through the second incident, a very short period of time took place and they were continuing. The police officer, just from the first incident, knew that when he turned around, he pulled out a gun and fired it. The officer certainly had severe apprehension in the residential yard that when he did the same movement that there was a very strong potential that he had another weapon, whatever it may be. Mr. Vanderegg, you're over time. You reserve two minutes for rebuttal. Okay. I would respectfully refer the bench to our brief. Thank you. Thank you. We'll hear from the appellee. Ms. Kovalenko. Thank you, Judge, and may it please the court, Nina Kovalenko on behalf of Mr. Thomas. Officer Wellenreuther shot Mr. Thomas in the back of his neck, even though he knew that Mr. Thomas was unarmed, had his back to him, and was running away. It is beyond debate that this use of potentially deadly force by Officer Wellenreuther violated Mr. Thomas' constitutional rights, which were clearly established at the time. I want to start by responding to a few points that appellant's counsel made in his argument. Counsel started with a lengthy factual recitation. I'd like to note that the factual recitation is in several material respects contrary to the reasonable findings of the trial court. Counsel argued that Officer Wellenreuther told Mr. Thomas to stop multiple times. The trial court found, based on appropriate credibility determinations, that Mr. Thomas never heard such warnings or commands. Counsel argued that Mr. Thomas pulled a gun at Officer Wellenreuther in the parking lot of the gas mart. The trial court found, based on proper credibility determinations which deserve deference, that at the time that Mr. Thomas was in the parking lot of the gas mart, his BB gun remained in the pocket of his hoodie sweatshirt. Counsel argued at the start of this presentation that just prior to the second gunshot, which the trial court found to constitute excessive deadly force, Officer Wellenreuther turned, or rather Mr. Thomas turned toward Officer Wellenreuther and reached for his waistband. And Judge Robinson, I want to pause for a moment on your question. You asked whether Officer Wellenreuther had essentially acknowledged that it was impossible that Mr. Thomas was facing him at the time of the second gunshot, if that was in fact the gunshot that hit Mr. Thomas. That's exactly right. That is what Officer Wellenreuther testified at page 139 of the appendix, pages 90 to 91 of the trial transcript. Counsel also recounted for the panel various events that happened after the use of deadly force, after the relevant events concluded. These events are going to be found nowhere in the trial record. They were excluded as irrelevant issues at hand. In terms of the relevance of some of the testimony, to the extent that putting aside the hearsay format in which they were offered, the content of the statements, even if they didn't directly address the second shot, I understand the argument to be they contradicted the plaintiff's testimony as to what happened surrounding the first shot, which would have called into doubt his credibility as it relates to the second shot. And the defense was essentially precluded from the benefit of that impeachment by the exclusion of those statements. Am I misunderstanding the argument, and what's the response to it if I'm not? I would agree with that, Judge Robinson. Here's what I would say. On the points that are arguably relevant to the first gunshot, the statements do not, in fact, contradict the key testimony by Mr. Thomas. Neither of the statements says that Officer Wellenreuther identified himself as police prior to firing the first gunshot, so that actually contradicts Officer Wellenreuther's testimony, not Mr. Thomas's. Neither statement says that Mr. Thomas pointed a gun at Officer Wellenreuther. One of the statements says that Mr. Thomas started to pull his arm out from his waist area as though he were about to point something at the officer. Never mentions Mr. Thomas pointing a gun. Likewise, the statement by the store clerk doesn't mention Mr. Thomas using a gun in the parking lot at all. So that's how I would respond to that point. And I would note, as Your Honor just observed, neither witness observed the second gunshot at all. Of course, the trial court found that although it was a first question, the first gunshot did not constitute excessive deadly force, although the second gunshot did. And so neither witness claimed to have observed the second gunshot at all. And so to the extent there was any error, which we deny for the reasons in our brief and which I'm happy to get into, we would certainly take the position that any error did not affect a substantial right for those reasons. The Supreme Court held in Garner in a case involving facts material and indistinguishable from those here. Well, except that Garner was unarmed, right? That was not in dispute, whereas here it seems ambiguous, at least as to the second shot. Sure. So a couple of points on that. The statements in Garner say that the suspect was, quote, apparently unarmed and that the officer was, quote, reasonably sure and figured that Garner was unarmed. Here, I would say a few things. One, Officer Roland Ruther admitted that he saw Mr. Thomas toss his BB gun onto the street and that the BB gun landed on the curb out of Mr. Thomas' reach prior to the second use of force. And Officer Roland Ruther admitted that as of that point, the gun that he had seen in Mr. Thomas' hands was lying in the street, that Mr. Thomas had abandoned it, and that his fleeing suspect was unarmed as far as he knew, which is what is relevant for the question of the objective reasonableness of his use of force. Those questions are at pages 82 and 83 of the trial transcript. Tell me how qualified immunity played out during the course of the trial, because it appears it was raised in a formal sort of sense, but in terms of arguments and proof, was abandoned or what's your view of what happened in that regard? Absolutely, Judge Parker. Our position is that Officer Juan Ruther abandoned his qualified immunity defense by failing to adequately develop it prior to trial, which is what this court required in the Blissett case. This is what- Prior to trial? Correct. And that is what the trial court properly found, because in all of the eight years or so of pretrial proceedings, Officer Juan Ruther did nothing to develop the defense. And, in fact, there's no real argument to the contrary. In Appellant's brief, the appellant takes the position that the defense was only arguably developed at the deposition without any further explanation. And so our position is that the defense was waived. It is an affirmative defense. It is incumbent on the defendant to adequately develop it and to argue it. That didn't happen. And so this court need not reach a qualified immunity analysis on that basis. Nevertheless, the trial court did go on to analyze qualified immunity, as would be required if the defense was not waived, and properly found that in this case, where Officer Juan Ruther shot Mr. Thomas, knowing that he was unarmed, it is obvious that no reasonable officer would have believed that the use of deadly force was necessary. That is the required outcome under this court's holding in the O'Byrke case. Unless the panelists have further questions, we'll rest. Thank you, Counsel. Mr. Van Der Weide, you're preserved two minutes for rebuttal. Thank you very much. I just wanted to make sure I'm on it. Just quickly on the point of the use of the statements would not only corroborate, but would also contradict some of the statements by the plaintiff. Pointing the gun was part of one of the statements of one of those parties. As far as the plaintiff admitting that when he started the gun that he was unarmed, that was at a point in the trial where the plaintiff was asked to direct witness of the defendant, which they would direct witness to the plaintiff, and he asked a series of questions, and the attorney said, well, then he was unarmed. And he said at that point, yeah, unarmed. But it was clear that he clarified that in court's examination. Further, as far as the incident with the second shot, the police officer then was confronted with the same activity and movement that the plaintiff exhibited in the first, and he produced a weapon. The police officer couldn't possibly know whether he actually had another weapon with him. So that's the county's case for the police officer, and we believe that should be reversed. As far as, I don't believe that each county ever waived qualified immunity. It's pleaded as a defense, affirmed as a defense, and the answer was argued in the pre-trial and was argued in the post-trial. That type of defense is from the same setting as the trial of the chief that took place. I understand that you take issue with the trial court's factual finding, but if we accept the trial court's factual finding that Mr. Thomas was unarmed and fleeing and facing the other way when the shot was fired, is there an argument on the merits that qualified immunity could apply to that situation? On those facts, not on the facts that you're arguing. To be honest with you, that's a close question because they overlap. But again, I would simply argue that Wellenbrecher had no idea whether he had another weapon. The whole statement or claim that Wellenbrecher knew him to be unarmed, when he was confronted with the same movement of what I mean, of the first incident, he was in fear for his life and the safety of people around him. He's now in a residential setting. This whole thing took place in a matter of minutes at most. So it's really the apprehension of the police officers from the beginning to the end. That is the county's case. I appreciate your patience. Thank you both. Appreciate your arguments. We'll take the case under advisement.